UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARLOS R. PIKE,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER TRANSPORTATION & WAREHOUSING, INC. and DANIEL DUBEN SR.,<br><br>Defendants. | No. 13 C 8835<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Pike brought this personal injury action against Defendants, alleging that Duben was negligent in operating a semi-trailer truck owned by Premier. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). In November 2016, the case proceeded to trial. While the jury was deliberating, the parties informed the Court that they had entered into a high-low settlement agreement,[1] pursuant to which they settled the underlying claim. Pike now moves the Court to strike or reduce the lien amount of $165,950.61 requested by nonparty Chicago Regional Council of Carpenters Welfare Fund (the Fund). As discussed more fully below, the motion is denied.

---

[1] A high-low agreement is a "settlement in which a defendant agrees to pay the plaintiff a minimum recovery in return for the plaintiff's agreement to accept a maximum amount regardless of the outcome of the trial." Black's Law Dictionary 746 (8th ed. 2004).

## I. BACKGROUND

The Fund is a self-funded, multiemployer ERISA employee welfare benefit plan (the Plan). Pike is a covered individual and a participant in the Plan. The Plan provides for an equitable right of reimbursement for any recovery from a third-party tortfeasor. (Dkt. 90, Ex. 1). The Plan further provides that the participant is responsible for payment of any attorneys' fees. (*Id.*). The Fund is under no obligation to pay benefits to covered individuals if the claim is caused by a third party and will provide benefits only in reliance on the participant's obligation to reimburse the Fund upon conclusion of the third-party claim. (*Id.*).

Pike was injured in a motor-vehicle accident in September 2012 and filed the instant cause of action against Defendants for injuries he sustained. (Dkt. 84 at ¶ 1; Dkt. 90 at 2). As a precondition for payment of medical expenses related to the accident, Pike executed a Reimbursement Agreement as required by the Plan, wherein he agreed to grant the Fund an equitable lien on any recovery, waive the common-fund doctrine, and assume responsibility for all attorneys' fees incurred in pursuit of his claim against Defendants. (Dkt. 90, Ex. 2, Reimbursement Agreement). The Fund has paid out $165,950.61 in medical and disability benefits covering the injuries Pike sustained in the September 2012 accident. (Dkt. 90, Ex. 4 (Galindo Decl.) at ¶ 7 & Ex. E).

The case proceeded to trial on November 14, 2016. (Dkt. 68). On November 17, while the jury was deliberating, the parties informed the Court that they had entered into a high-low settlement agreement (Settlement Agreement). (Dkt. 77; Dkt.

84 at ¶ 3). The jury returned a verdict in favor of Defendants and against Plaintiff (Dkt. 81), which triggered the Settlement Agreement's minimum award. (Dkt. 84 at ¶ 3). After failed settlement discussions between Pike and the Fund (Dkt. 84 at ¶ 4 & Ex. A), Pike filed the instant motion.

## II. DISCUSSION

Pike contends that the Fund is not entitled to any reimbursement because the jury "'diminished' the claim to zero based upon (among other things) Mr. Pike's own negligence." (Dkt. 84 at ¶ 7). Pike argues that because the jury reduced his claim to zero, the Fund's subrogation claims should be reduced as well. (*Id.* ¶¶ 6–7). But the verdict indicates only that the jury found for Defendants and against Pike. (Dkt. 81). If the jury made a comparative fault calculation, it was not recorded. Pike suggests that the Court should consider the jury's post-verdict discussions with the Court and counsel. (Dkt. 84 at ¶ 7). However, such discussions were not recorded and, more importantly, are inadmissible. Fed. R. Evid. 606(b)(1) ("During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.").

Further, the jury verdict was supplanted by the parties' Settlement Agreement. Illinois courts have long recognized that high-low agreements are settlement

agreements.[2] *Pinske v. Allstate Prop. & Cas. Ins. Co.*, 2015 IL App (1st) 150537, ¶ 22 (collecting cases).

> A high-low agreement, when initially reached by the parties . . . is, in fact, a conditional settlement. The condition of the agreement is that the jury render[s] a verdict that falls outside the range of the high-low agreement. When a verdict is rendered outside of the agreed-upon range, the condition is triggered and the "high" or the "low" becomes binding upon the parties as a settlement. By contrast, when a jury renders a verdict within the range of the high-low agreement, the condition is not met and the high-low agreement is rendered academic.

*Id.*, ¶ 23 (citation omitted). Therefore, when the Pike jury returned a verdict below the range of the Settlement Agreement, "the verdict was supplanted by the parties' agreement" and triggered the minimum settlement amount. *Id.* (citation omitted). The settlement award "was not determined by the jurors, but rather, by the parties themselves." *Id.* (citation omitted). And the Reimbursement Agreement between Pike and the Plan clearly applies when a settlement is reached between a Plan participant and a third-party tortfeasor, as occurred in this case. (Reimbursement Agreement ¶ 5).

Pike also relies on the jury verdict to assert that the Illinois Health Care Services Lien Act (Lien Act) precludes the Fund from receiving any reimbursement from the settlement proceeds, or, at a minimum that the Fund must "bear its pro rate share of attorney fees and costs under the statute."(Dkt. 84 at ¶¶ 6–7). The Lien Act addresses subrogation claims in pertinent part as follows:

---

[2] The parties agree that Illinois law applies to this lawsuit (*See* Dkt. 84 at ¶¶ 5–10; Dkt. 90 at 7, 10–14). *Wood v. Mid-Valley, Inc.*, 942 F.2d 426, 427 (7th Cir. 1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies."); *accord Markin v. Chebemma Inc.*, 526 F. Supp. 2d 890, 893 (N.D. Ill. 2007).

> If a subrogation claim . . . that arises out of the payment of medical expenses . . . with respect to a claim for personal injury . . . , claimant's recovery is diminished:
>
> > (1) by comparative fault: . . .
>
> the subrogation claim . . . shall be diminished in the same proportion as the personal injury . . . is diminished [and] . . . the full value of the claim shall be determined by the court having jurisdiction over the matter.
>
> After reduction of the subrogation claim . . . due to . . . comparative fault . . . , the party asserting the subrogation claim . . . shall bear a pro rata share of the personal injury . . . claimant's attorney's fees and litigation expenses.

770 ILCS 23/50.

But the Lien Act it is not applicable here by its own language. The Lien Act's anti-subrogation clause is triggered only if an award is reduced by comparative fault.[3] As discussed above, there was no comparative fault finding, and in any event, the jury's verdict was supplanted by the parties' Settlement Agreement.

And even if the Lien Act's subrogation clause were to apply here, ERISA preempts state anti-subrogation laws that are inconsistent with subrogation clauses in self-funded welfare benefit plans. *FMC Corp. v. Holliday*, 498 U.S. 52, 58–61, 65 (1990) (finding ERISA's "pre-emption clause . . . conspicuous for its breadth," ruling that "self-funded ERISA plans are exempt from state regulation insofar as that regulation relates to the plans," and holding that ERISA pre-empts Pennsylvania's Motor Vehicle Financial Responsibilities Law, which precluded reimbursement from a claimant's tort recovery from an employer's self-funded health care plan) (citation

---

[3] Although not relevant here, the Lien Act also provides for a pro rate reduction of a subrogation claim if the full value of a personal injury claim is uncollectible due to limited liability insurance. 770 ILCS 23/50(2).

omitted). The Lien Act's subrogation clause became law in 2013, and it has not yet been subject to challenge. However, a similar Indiana provision was found to be preempted by ERISA because the provision sought to limit an ERISA plan's "right to reimbursement from beneficiaries who recover from third-party tortfeasors." *Biomet, Inc. Health Ben. Plan v. Black*, 51 F. Supp. 2d 942, 949 (N.D. Ind. 1999) ("Because the Plan is a self-funded employee benefit plan, Indiana subrogation law does not apply and Plaintiff is entitled to judgment as a matter of law as to the validity of its lien."); *see also McKim v. S. Illinois Hosp. Servs.*, 2016 IL App (5th) 140405, ¶ 26 (finding that Lien Act's subrogation provision is preempted by Medicare Secondary Payer Act). Thus, because the Plan is a self-funded ERISA employee welfare benefit plan, the Plan's subrogation clause requiring participants to reimburse the Fund from any recovery received from third party tortfeasors is not subject to the Lien Act. (Dkt. 90, Ex. 1).

In his Reply, Pike contends that the Court should reject the Fund's argument because the Fund did not submit the entire Plan, but only submitted the summary plan description (SPD) for the Court's consideration. (Dkt. 93 at ¶¶ 1–2) (asserting that "[t]he SPD is not the actual Plan" and arguing that "[b]y not producing the Plan for this Court to determine whether its subrogation clause has a reimbursement provision, the Fund has failed to satisfy its burden of producing all relevant documents the Fund's claims are based on"). In *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011), the Supreme Court "conclude[d] that the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but

that their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)." (emphasis in original). However, the Court is not relying on the SPDs. Here the Plan has presented evidence of its *actual* subrogation agreement. The Plan administrator attested that the "Plan Document contains a Subrogation and Reimbursement provision that provides that the Fund has a right of reimbursement for benefits paid out related to an injury that may have been caused by a third-party." (Dkt. 90, Ex. 3 (Guastaferri Decl.) at ¶ 5). The Court can rely on this uncontroverted evidence to determine that the Plan indeed has a right to reimbursement.

Finally, Pike contends that the amount owed to the Plan should be reduced pursuant to the common-fund doctrine. (Dkt. 84 at ¶ 10).

> The common fund doctrine is an exception to the general American rule that, absent a statutory provision or an agreement between the parties, each party to litigation bears its own attorney fees and may not recover those fees from an adversary. The doctrine provides that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. Underlying the doctrine is the equitable concept that the beneficiaries of a fund will be unjustly enriched by the attorney's services unless they contribute to the costs of the litigation.

*Wendling v. S. Illinois Hosp. Servs.*, 242 Ill. 2d 261, 265 (2011) (citations omitted). However, the common-fund doctrine is a "quasi-contractual right," *Scholtens v. Schneider*, 173 Ill. 2d 375, 390 (1996), that "is not available when an express contract exists concerning the same subject matter," *C. Szabo Contracting, Inc. v. Lorig Const. Co.*, 2014 IL App (2d) 131328, ¶ 25; *see US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1543, 1546–47 (2013) (the common-fund doctrine, an equitable doctrine,

cannot override the plain terms of a contract). In *McCutchen*, the Supreme Court found it appropriate to apply the common-fund doctrine to a portion of the settlement proceeds because the plan document at issue made no mention of the doctrine and "the plan [was] silent on the allocation of attorney's fees." 133 S. Ct. at 1548. Here, to the contrary, both the Plan *and* the Reimbursement Agreement explicitly waive the common-fund doctrine and require Pike to assume sole responsibility for attorneys' fees. (Dkt. 90, Ex. 1; Reimbursement Agreement ¶ 11).

The cases cited by Pike are unpersuasive. In *Blackburn v. Sundstrand Corp.*, 115 F.3d 493 (7th Cir. 1997), the court found the common-fund doctrine applicable because the plan documents did not waive the doctrine or require plan participants to pay their own legal fees. *Id.* at 496. Here, both the Plan and the Reimbursement Agreement explicitly waive the common-fund doctrine and require Pike to pay his own fees. In *Scholtens v. Schneider*, 173 Ill. 2d 375 (1996), the Illinois Supreme Court concluded that ERISA did not preempt the common-fund doctrine. *Id.* at 397. But *Scholtens* is in direct contradiction to later-decided federal cases on the same issue, most notably *McCutchen*, which ruled that equitable principles, like the common-fund doctrine, cannot "override the clear terms of a plan." 133 S. Ct. at 1543; *see also Admin. Comm. of Wal-Mart Stores, Inc. Associates' Health & Welfare Fund v. Hummell*, 245 F. Supp. 2d 908, 912 (N.D. Ill. 2003) (declining to follow *Scholtens* because there is "too much support for the proposition that state law cannot void explicit and lawful provisions in ERISA plans").

## III. CONCLUSION

For the reasons discussed above, Plaintiff's Motion to Strike and/or Reduce the Alleged Lien or Right of Reimbursement [84] is **DENIED**.

E N T E R:

Dated: March 10, 2017

MARY M. ROWLAND
United States Magistrate Judge